# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| DATACLOUD TECHNOLOGIES, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>APTIV PLC,<br><br>    Defendant. | Civil Action No. 2:26-cv-00181<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff DataCloud Technologies, LLC (hereinafter, "Plaintiff" or "DataCloud") files this Complaint for patent infringement against Defendant Aptiv PLC ("Aptiv" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

|    | U.S. Patent No. | Reference |
|----|----|----|
| 1. | 7,209,959 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7209959 <br> https://patents.google.com/patent/US7209959B1/en?oq=7%2c209%2c959 |
| 2. | 7,246,351 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7246351 <br> https://patents.google.com/patent/US7246351B2/en?oq=7%2c246%2c351 |
| 3. | 7,398,298 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7398298 <br> https://patents.google.com/patent/US7398298B2/en?oq=7398298 |
| 4. | 8,156,499 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8156499 <br> https://patents.google.com/patent/US8156499B2/en?oq=8%2c156%2c499 |
| 5. | 8,607,139 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8607139 <br> https://patents.google.com/patent/US8607139B2/en?oq=8%2c607%2c139 |

2. Plaintiff seeks monetary damages.

## PARTIES

3. DataCloud is a limited liability company organized and existing under the laws of the State of Georgia and maintains its principal place of business at 44 Milton Avenue, Suite 254, Alpharetta, Georgia, 30009 (Fulton County).

4. Based upon public information, Aptiv PLC is a public limited company organized under the laws of Jersey.[1]

5. Based upon public information, Aptiv has its principal place of business at

---

[1] Form 10-K for the year ending December 31, 2025 at p. 5 (available at: https://s21.q4cdn.com/440699111/files/doc_financials/2026/APTV-12-31-2025-10-K.pdf )

Spitalstrasse 5, 8200 Schaffhausen, Switzerland.[2]

6. Based upon public information, Aptiv maintains a facility in El Paso, Texas, as shown below:[3]



*Figure 1:* Aptiv Job Openings in El Paso, Texas

7. Based upon public information, Aptiv may be served through its registered agent, Peter Snell, located at 6275 W. Plano Pkwy., Suite 500, Plano, Texas 75093-4942.

## JURISDICTION AND VENUE

8. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

9. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

---

[2] *Id.* at p. 1

[3] Source:
https://www.aptiv.com/en/jobs/search?country=United%20States&citycountry=El%20Paso|United%20States (last visited: February 25 2026)

10. Defendant is subject to this Court's specific and general personal jurisdiction under due process because of its substantial business in this Judicial District, in the State of Texas, and in the United States, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this state, in this District, and in the United States.

11. Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District, in the State of Texas, and in the United States, directly, through intermediaries, by contributing to and through the inducement of third parties, and offers and sends its products and services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

12. More specifically, Defendant directly and/or through its intermediaries, ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its products and services in the United States, the State of Texas, and in this District.

13. Based on the foregoing, Defendant has significant ties to, and presence in, the State of Texas and this District, making venue in this Judicial District both proper and convenient for this action.

14. Therefore, venue is proper in this District pursuant to 28 U.S.C. §1391(b)(3) and/or 28 U.S.C. §1400(b).

## PREVIOUS NOTICE OF THE ASSERTED PATENTS

15. Defendant was previously notified of the applicability of DataCloud's patent portfolio to Defendant's products and services, and of Defendant's infringement of the Asserted Patents, by way of the letter(s) listed below:

- 3/9/23 – Letter sent to Ms. Katherine H. Ramundo (Senior Legal Officer) – *via* FedEx / Email

- 3/24/25 – Response email from Paul Margolis (Senior Commercial IP Counsel)

- 6/18/25 – Email sent to Mr. Margolis

- 7/8/25 – Follow-up email

- 9/17/25 – DataCloud Notice Letter and Draft Complaint sent to Mr. Margolis

- 10/6/25 – Response email from Mr. Margolis

- 10/15/25 – Conference call with Mr. Margolis

- 11/11/25 – Follow-up email

- 12/2/25 – Follow-up email

### COUNT I: <u>INFRINGEMENT OF U.S. PATENT NO. 7,209,959</u>

16. Plaintiff re-alleges and incorporates by reference each of paragraphs 1-15 above as though fully set forth in their entirety.

17. U.S. Patent No. 7,209,959 (the "'959 patent") was issued on April 24, 2007 after full and fair examination by the USPTO of Application No. 09/542,858 which was filed on April 4, 2000. The '959 patent is titled "Apparatus, System, And Method For Communicating To A Network Through A Virtual Domain Providing Anonymity To A Client Communicating On The Network." *See* '959 patent at p. 1.

18. DataCloud owns all substantial rights, interest, and title in and to the '959 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

19. DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '959 patent.

20. The written description of the '959 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

21. The claims of the '959 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve networks and network systems by anonymizing network activity for individual clients and groups of clients for, among other reasons, security, traffic management, and routing purposes.

22. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '959 Patent, either literally or under the doctrine of equivalents, because it shipped, distributed, made, used, imported, offered for sale, sold, and/or advertised the products and services described below in a way that infringes.

23. For instance, Defendant performed at least claim 1 of the '959 patent by performing a method comprising: in response to a request by a client to initiate communication with a destination website; setting up a forwarding session between the client and a destination server corresponding to the destination website, the forwarding session employing a forwarder disposed between the client and the destination server to forward packets sent from the client to the destination server and to forward packets sent from the destination server to the client; employing the forwarder to transfer packets between the client and the destination server during the forwarding session, wherein the forwarding session is set up and implemented such that neither the client or the destination server is aware of the employment of the forwarder; employing a

controller configured to communicate with the forwarder and a domain name server, wherein the controller queries the domain name server to resolve the name of the destination website associated with the destination server and initiates communication with the forwarder in response to an answer from the domain name server to resolve the name of the destination website associated with the destination server; employing a deceiver configured to communicate with the controller and the client, wherein the deceiver receives the request by the client to initiate communication with the destination website and initiates the controller to query the domain name server to resolve the name of the destination website associated with the destination server; and in response to the controller receiving the answer from the domain name server and initiating communication with the forwarder, initiating the forwarding session.  *See* **Exhibit A**.

24.     Based upon public information, Aptiv's website infrastructure (www.aptiv.com) performed the recited method and step which shows the details for responding to website requests with Developer Tools enabled.  The system depicted a high-level overview of the hosting of dynamic websites, such as used with Aptiv website infrastructure on information and belief. For a destination web server hosted, the web server appeared to have a direct TCP connection between the local address (*e.g.* 192.168.1.59:61906) and the client address of 65.49.2.65:35739 (*e.g.* public IP). Thus, neither the client nor the destination server was aware of the employment of the forwarder. Domains names hosted by Aptiv will be queried by the controller to resolve the name of the destination website associated with the destination server, such as "www.aptiv.com". For example, in the complete list of 701 subdomain names for Aptiv, other names share the same IP address such as downloads.aptiv.com. The domain name server must be queried to find a corresponding private IP address of the destination website when subdomains share the public IP address. Aptiv website infrastructure performed the recited step. The deceiver both (i) received the

request and (ii) later sent the data from the destination server in a manner that makes the deceiver appear to be the source of the data when the source of the data is actually the destination server. *See* Exhibit A.

25.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

26.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 7,246,351

27.     Plaintiff re-alleges and incorporates by reference each of paragraphs 1-15 above as though fully set forth in their entirety.

28.     U.S. Patent No. 7,246,351 (the "'351 patent") was issued on July 17, 2007 after full and fair examination by the USPTO of Application No. 10/081,921 which was filed on February 20, 2002.  The '351 patent is entitled "System And Method For Deploying And Implementing Software Applications Over A Distributed Network."  *See* '351 patent at p.1.  A Certificate of Correction was issued on November 20, 2007.  *See id.*, at p.25.

29.     DataCloud owns all substantial rights, interest, and title in and to the '351 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

30.     DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '351 patent.

31.     The written description of the '351 patent describes in technical detail each

limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

32. The claims of the '351 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include components that improve the deployment and operation of software applications over TCP/IP networks.

33. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '351 patent, either literally or under the doctrine of equivalents, because it shipped, distributed, made, used, imported, offered for sale, sold, and/or advertised the products and services described below in a way that infringes.

34. For instance, Defendant performed at least claim 14 of the '351 patent by performing a method for storing and running a software module on a user's client device that provides text files containing embedded program logic for the software module to assemble into a functioning application (*e.g.,* a website application) that provides a graphical user interface for receiving and interpreting user inputs to the client device that enables user interaction with the computer program running on the client device. See **Exhibit B**.

35. Based upon public information, Aptiv allowed users to view video content on their mobile devices, which interact with the server. The video player was associated with the code to play the video content on the user's device. The video player displayed on the device included options to receive user input and control the video playback using pause and play button. Aptiv enabled viewing video content on user's devices. A software module such as Aptiv website, ran on

the mobile device and connected to the Aptiv server to fetch program logic and interface components as text-based files. These files included embedded code for assembling functional parts of the website such as the video player directly on the device. Once assembled, the video player provided a graphical user interface (GUI) that allows the user to interact with the video content. This interface included user input controls for the video content such as play, pause, and other playback options, which are interpreted and handled locally on the device. *See* Exhibit B.

36.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

37.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,398,298

38.     Plaintiff re-alleges and incorporates by reference each of paragraphs 1-15 above as though fully set forth in their entirety.

39.     U.S. Patent No. 7,398,298 (the "'298 patent") was issued on July 8, 2008 after full and fair examination by the USPTO of Application No. 11/690,803 which was filed on March 23, 2007. The '298 patent is titled "Remote Access And Retrieval Of Electronic Files." *See* '298 patent at p. 1.

40.     DataCloud owns all substantial rights, interest, and title in and to the '298 Patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

41.     DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the

'298 Patent.

42. The written description of the '298 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

43. The claims of the '298 Patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include components that improve the retrieval and transmission of data from and/or to a remote server.

44. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '298 Patent, either literally or under the doctrine of equivalents, because it shipped, distributed, made, used, imported, offered for sale, sold, and/or advertised the products and services described below in a way that infringes.

45. For instance, Defendant performed at least claim 13 of the '298 patent by performing a method for providing remote data directory structure management across at least one communications network comprising: receiving at least one request by a computing application operating on a computer server over the communications network for remote management control of data directory structures from participating users offered through a computing device coupled to the communications network; processing the request to provide the remote management control over the data directory structures by providing data directory structure information if deemed accessible from data stored in a profile store relating to the data and data directory structures accessible to each of the participating users, the profile data store being queried for the data directory structures accessible to each of the participating users, wherein a single directory

structure from among a plurality of the data directory structures associated with the profile data store is selected by each of the participating users for modification; delivering desired data and the remote management control over the desired data to identified delivery targets by the computing application over the communications network; generating at least one notification of the delivery of the desired data to the identified delivery targets upon the delivery of the desired data to the identified delivery targets; determining if user requested data is accessible based on the information in the profile data store; and delivering the user requested data and sending a confirmation of the delivery. See **Exhibit C**.

46. Based upon public information, Aptiv Connect Qualifier is an end-to-end enterprise solution for pre-production validation. Built for Enterprises, Aptiv Connect Qualifier allows vehicle manufacturers that often have many different engineering groups, each interested in different vehicles and different types of data to have fine-grained role-based access control, combined with its group and fleet filters that allowed each person in the organization to see only the data and reports of interest to them. Aptiv stored data on servers located in the US to provide. robust user management features to control organizational access levels, ensuring the right people see the right data. Users were grouped into access levels, with customizable permissions. Designated admins could manage employee accounts, assign access levels, and restrict content and features. See Exhibit C.

47. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

48. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35

U.S.C. § 284.

## COUNT IV: <u>INFRINGEMENT OF U.S. PATENT NO. 8,156,499</u>

49. Plaintiff re-alleges and incorporates by reference each of paragraphs 1-15 above as though fully set forth in their entirety.

50. U.S. Patent No. 8,156,499 (the "'499 patent") was issued on April 10, 2012 after full and fair examination by the USPTO of Application No. 12/331,980 which was filed on December 10, 2008. The '499 patent is entitled "Methods, Systems and Articles of Manufacture for Scheduling Execution of Programs on Computers Having Different Operating Systems" *See* '499 patent at p. 1.

51. DataCloud owns all substantial rights, interest, and title in and to the '499 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

52. DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '499 patent.

53. The written description of the '499 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

54. The claims of the '499 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include components that improve how computerized communications systems synchronize files across multiple nodes.

55. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '499 patent, either literally or under the doctrine of equivalents, because it shipped, distributed, made, used, imported, offered for sale, sold, and/or advertised the products and services described below in a way that infringes.

56. For instance, Defendant performed at least claim 1 of the '499 patent by performing a method for scheduling a first computer (*e.g.,* a network-attached device) communicatively coupled with the scheduling computer (*e.g.*, the App Store) to execute a first program (such as a schedule to update firmware *via* the scheduling computer wherein the first computer has a first operating system (*e.g.,* on a first network-attached device); receiving at the scheduling computer a result from the first computer whether an update is necessary or has occurred) wherein the result from the first computer is based at least in part upon the execution of the first program by the first computer (such as a firmware update schedule from the scheduling computer; and scheduling a second computer *(e.g.,* a second network-attached device) communicatively coupled with the scheduling computer to execute a second program in response to a determination that the result from the first computer meets a criterion (*e.g.,* firmware needs to be or was updated) wherein the second computer has a second operating system and the second operating system is different from the first operating system (*e.g.,* the operating system on the second network-attached device is different from the operating system on the first network-attached device).  *See* **Exhibit D**.

57. Based upon public information, The Aptiv Smart Vehicle Architecture (SVA) had a server-based central computer, the Aptiv Open Server Platform, which supported over-the-air (OTA) software and firmware updates.  The Aptiv SVA was comprised of a Software-Defined Vehicle which supported OTA updates.  The Central Vehicle Controller (CVC) in the vehicles ("first computer having a first operating system") worked with the RTU-based embedded vehicle

software environment to manage OTA downloads of the updates provided by the OEM in the cloud ("second computer having a second operating system"). OTA updates were received by a Secure Connected Gateway, which was downloaded, validated and then updated by the vehicle. *See* Exhibit D.

58. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

59. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,607,139

60. Plaintiff re-alleges and incorporates by reference each of paragraphs 1-15 above as though fully set forth in their entirety.

61. U.S. Patent No. 8,607,139 (the "'139 patent") was issued on December 10, 2013 after full and fair examination by the USPTO of Application No. 10/834,595 which was filed on April 29, 2004. The '139 patent is entitled "System and process for managing content organized in a tag-delimited template using metadata." *See* '139 patent at p. 1. A Certificate of Correction was issued on June 24, 2014. *See id.*, at p.23.

62. DataCloud owns all substantial rights, interest, and title in and to the '139 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

63. DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '139 patent.

64. The written description of the '139 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

65. The claims of the '139 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include components that improve systems and processes for managing content organized in a tag-delimited template using metadata.

66. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '139 patent, either literally or under the doctrine of equivalents, because it shipped, distributed, made, used, imported, offered for sale, sold, and/or advertised the products and services described below in a way that infringes.

67. For instance, Defendant performed at least claim 8 of the '139 patent by performing a method displaying a graphical interface based on a metadata template that has an object that represents a structure and an appearance of a web page wherein the object is based on a class (*e.g.,* a template where you can add/edit) stored in a base template, and wherein the graphical interface comprises an input field corresponding to the object and defining an input property of a data entry field and generating a data entry form comprising the data entry field wherein the data entry field is configured to accept input corresponding to content of the object and a web page generator configured to generate the web page based on the metadata template wherein the web page comprises the content represented by the input. *See* **Exhibit E**.

68. Based upon public information, the Aptiv website infrastructure

(https://go.aptiv.com/subscribe-to-newsletter.html) performed the recited method and step using Marketo Forms for responding, for example, to "Subscribe" object. The "Subscribe" form was configured with input fields that accept inputs from the user. The structure and appearance of the web page were determined by the object of the website. Multiple data entry fields were included in the form, each configured to receive inputs as defined by the object in the template. These data entry fields were assigned classes that were stored in a base template to handle user input. *See* Exhibit E.

69. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

70. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

71. Plaintiff demands a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

72. Plaintiff respectfully requests the following relief:

   A. An adjudication that one or more claims of each of the Asserted Patents has been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

   B. An award of damages to be paid by Defendant adequate to compensate Plaintiff Defendant's past infringement, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Defendant's infringement, an accounting of all infringing sales

    including, but not limited to, those sales not presented at trial;

  C. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

  D. That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

  E. Any further relief that this Court deems just and proper.

//

Dated: March 3, 2026　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ James F. McDonough, III*

　　　　　　　　　　　　　　　　　　　James F. McDonough, III (GA 117088)*
　　　　　　　　　　　　　　　　　　　Jonathan R. Miller (GA 507179)*
　　　　　　　　　　　　　　　　　　　**ROZIER HARDT MCDONOUGH PLLC**
　　　　　　　　　　　　　　　　　　　659 Auburn Avenue NE, Unit 254
　　　　　　　　　　　　　　　　　　　Atlanta, Georgia 30312
　　　　　　　　　　　　　　　　　　　Telephone: (404) 564-1866, -1863
　　　　　　　　　　　　　　　　　　　Email: jim@rhmtrial.com
　　　　　　　　　　　　　　　　　　　Email: miller@rhmtrial.com

　　　　　　　　　　　　　　　　　　　Jonathan L. Hardt (TX 24039906)*
　　　　　　　　　　　　　　　　　　　**ROZIER HARDT MCDONOUGH PLLC**
　　　　　　　　　　　　　　　　　　　712 W. 14th Street, Suite A
　　　　　　　　　　　　　　　　　　　Austin, Texas 78701
　　　　　　　　　　　　　　　　　　　Telephone: (210) 289-7541
　　　　　　　　　　　　　　　　　　　Email: hardt@rhmtrial.com

　　　　　　　　　　　　　　　　　　　C. Matthew Rozier (CO 46854)
　　　　　　　　　　　　　　　　　　　**ROZIER HARDT MCDONOUGH PLLC**
　　　　　　　　　　　　　　　　　　　1001 Bannock Street, Suite 241
　　　　　　　　　　　　　　　　　　　Denver, Colorado 80204
　　　　　　　　　　　　　　　　　　　Telephone: (404) 779-5305; (202) 316-1591
　　　　　　　　　　　　　　　　　　　Email: matt@rhmtrial.com

　　　　　　　　　**Attorneys for *Plaintiff* DATACLOUD TECHNOLOGIES, LLC**

　　　　　　　　　　　　　　　　　　　　　　　　　* admitted to the Eastern District of Texas

**EXHIBITS**

　　A.　Evidence of Use for U.S. Patent No. 7,209,959
　　B.　Evidence of Use for U.S. Patent No. 7,246,351
　　C.　Evidence of Use for U.S. Patent No. 7,398,298
　　D.　Evidence of Use for U.S. Patent No. 8,156,499
　　E.　Evidence of Use for U.S. Patent No. 8,607,139